The appellant's counsel contends for three propositions: First. That prior to the act of June, 1853, this company was not subject to taxation on its property or funds; Second. That by the provisions of that act it could be taxed as on a capital of $100,000 only; Third. That the act of July, 1853, did not alter or modify that of June, 1853, and that therefore the plaintiff was unjustly taxed at a higher sum than was lawful. That the plaintiff was rightfully assessed and taxed on its accumulated funds prior to the law of June, 1853, is, I think, fully established by the decisions of this court. (Sun Mutual Ins.Co. v. Mayor, c., of N.Y., 4 Seld., 241; Mutual Ins. Co.of Buffalo v. Supervisors of Erie, 4 Comst., 442;Deraismes, c., v. Merchants' Mutual Ins. Co., 1 Com. R.,
371.)
The more important, and it seems to me difficult, question to determine, is the effect of the act of June 29th, 1853. This act is entitled "An act to amend the general law relative to the incorporation of insurance companies," and contains one section, which reads as follows: "Any mutual life insurance company in this state, incorporated previously to the passage of the general insurance law, on the tenth day of April, 1849, shall be subject to taxation in the same manner as if it were incorporated under said general law, with a capital of one hundred thousand dollars, as required by the sixth section of the said general law." Although the title of the act purports to amend the general law in relation to the incorporation of insurance companies, it does no such thing, but relates wholly to companies incorporated prior to the passage of the general act. It is certain the legislature, in passing this act, did not intend to authorize the taxation *Page 435 
of these companies for the first time; because the decisions of this court, that similar companies were taxable under prior laws, had been previously made, and must be presumed to have been known to the legislature. If the object was not to confer power to tax, the inference is strong that the real object must have been to modify and limit a power previously existing. This, and companies with similar charters, had no capital, so denominated in their charters, and its accumulations were, from the nature of its business, subject to constant fluctuations from year to year. Hence, an assessment for one year would be no guide for the next. The legislature may, and probably did, in view of this fact intend to fix the amount at $100,000, so as to place it on the same footing with companies of a similar character organized under the general act of 1849. It is true, the sixth section of the act of 1849, which is referred to, does not limit the capital of companies to $100,000, but imposes that as the minimum of capital to commence with; and it may be contended that if their capital is really in excess of $100,000, they may be assessed accordingly. However this point may finally be decided, in respect to companies organized under the general law, where their declaration of intention states their capital at over $100,000, I think the act of June, 1853, fixes the capital of the previously incorporated companies or assumes it to be $100,000 only. That act declares they "shall be subject to taxation in the same manner as if they were incorporated under said general law with a capital of one hundred thousand dollars," c. Now, if this company had been incorporated under the general law, with a capital specified at $100,000, it could be taxed for that sum only, Hence, the conclusion of the appellant's counsel on this point seems to me legitimate, that the act of June, 1853, limits the taxable capital of this company to $100,000.
In March, 1855, the legislature passed an act in which they declare such to have been their intention, in the act of June 29th, 1853. Although this declaratory act may not *Page 436 
be binding on the courts, whose sole prerogative it is to construe laws, yet it is entitled to respect as a legislative construction of an ambiguous phraseology.
The next question to be considered is, whether the act of July, 1853, justified the tax commissioners and supervisors in retaining the tax at the sum fixed by the assessors, or, in other words, whether it repealed the act of June 29th, 1853. I am of opinion it did. This company, being subject to taxation on its reserved fund by the general laws contained in the Revised Statutes, falls directly within the provisions of the act of July 21st, 1853, amending the Revised Statutes in relation to taxation. The first section directs the assessors to insert, in the first column of their assessment rolls, the name of each incorporated company liable to taxation on its capital or otherwise; and that, under its name, they shall specify "the amount of its capital stock paid in and secured to be paid in, * * * the amount of all surplus profits or reserved funds, exceeding ten per cent of their capital, after deducting the said amount of their real estate, and the amount of its stock, if any, belonging to the state," c.
Now, admitting the law of June, 1853, fixed the capital stock of this company subject to taxation at $100,000, it was competent to the legislature to pass a law, the next day, taxing the reserved funds of the same company. This they have done; and whether they call it a repeal of the act of June, 1853, or the imposition of a tax on a fund or species of property not taxable by the act of June, 1853, is quite immaterial. The act of June taxed capital; that of July taxed the reserved fund also. The judgment of the court below should be affirmed.
The second case does not differ from the one already discussed, except in the year of the assessment, and in the further fact that the assessors of the ward assessed the value of the capital stock at $100,000 and did not assess the surplus profits or reserved funds of the company at any sum; but the tax commissioners altered the assessment by adding *Page 437 
thereto $900,000 in addition, believing that the assessors mistook their duty by supposing that the company could only be assessed on its capital. The twenty-first section of the act of 1850 (Laws of 1850, 192) directs that "the tax commissioners must thereupon correct the assessment roll for each ward, and add thereto and assess according to law any real or personal estate liable to taxation which may have been omitted by the said assessors." The answer, which is admitted by the demurrer, alleges that the assessors did not assess the surplus profits or reserved funds of the company invested in bonds and mortgages to the amount of $2,343,681. The case comes within the words of the statute making it the duty of the tax commissioners to add this sum to the assessment roll. I think the judgment should be affirmed.